## McCREARY v. TOPPER.

A distributive share is not liable to attachment in execution until ascertained by a settlement of the administration account.

In error from the Common Pleas of Adams.

A judgment was confessed against Topper, in 1834; on which an attachment execution was issued, and Raffensperger summoned as garnishee. He pleaded that he was the administrator of the defendant's father, and that the funds attached were the distributive share of the defendant therein. But the attachment was served before a settlement of any administration account. Demurrer and joinder, and judgment for the garnishee.

*McCreary*, for plaintiff in error.—The fund is liable, under the acts of 1843, §10; 1842, §§1, 2. That it was not then due, can

make no difference. The proceeding is assimilated to foreign attachment; and there, if the debt is due when the *sci. fa.* issues, that is enough: 2 Dal. 211, 277; 1 Y. 255; 2 Ib. 190; 6 Wh. 125.

*Smyser*, contrà.—7 Barr, 482, decides the point. There is a distinction between this proceeding and foreign attachment. In the former, only debts *due* can be attached.

*June* 15. COULTER, J.—This case presents to the court for its determination, a second time within two years, the question, whether a supposed, or potential distributive share, arising out of personal estate, is subject to attachment in execution, immediately after the death of the ancestor, or not; and whether the creditor is obliged to wait until settlement of an administration account, by the administrator, so as to make it manifest whether a distributive share exists or not. The liability of the subject-matter to attachment, is not in controversy; but merely the period of time, to which the act of Assembly refers its liability; whether in its chrysalis or potential state, or·after it has assumed shape, form and substance. The court below were undoubtedly right in opinion, that the case of the Bank of Chester *v.* Ralston, 7 Barr, 482, governed the present one; and no perceptible difference in principle can be discerned between them. In that case, by the settlement of the account of Ralston's executors, it appeared there was a balance due to the children of Henry Olwine, or a·legacy to them. They all died without issue and intestate; their father, Henry Olwine administered on the estate, and was their sole heir, and of course stood in their place. But there were debts due by them, and whether any, or what amount of the legacy would remain, after payment of these debts of the legatees, did not appear by a settlement of the administration account of their administrator and heir, Henry Olwine. The court below decided that the attachment would not lie, and that decision was affirmed by this court. The mist was thickened, perhaps, a little in that case, but the principle is identical with the present. In both the share potentially existed, and in neither is there anything more. The court, at least a majority of them, upon a calm second thought, are satisfied with the judgment in Bank *v.* Ralston, before cited, and concur with the court below, that it precisely rules this case. The act of 1843 allows the attachment in execution of distributive shares, in the same manner that debts due are leviable in satisfaction of a judgment. It had been ruled in many cases, that debts not due could not

be attached in execution. Thus, an annuity by will not yet due, was not attachable by execution: 2 Miles, 412; the salary of an inspector of customs, in the hands of the collector, not fully earned; and the salary of the warden of the Eastern Penitentiary, were decided not to be attachable in execution, and other like cases. All this must have been known by the legislature; and yet they directed, by the act of 1843, that distributive shares should be attachable and *levied* upon, in satisfaction of any judgment, in the same manner that debts *due*, are made subject to execution. The meaning of the act would therefore seem to be, that it was subject to execution, when it became palpable to sense and judgment by the settlement of the administrator's account, and, therefore, became a debt due from the administrator to the distributee.

This would be in accordance with all the kindred analogies of the law, and would avoid a wanton sacrifice of the interest of the distributee. The only plausible objection made against this interpretation of the statute, is, that the distributee might assign his uncertain interest, and thereby defeat the creditor. But any debtor may do the same thing, with regard to any chattel interest, and defeat the judgment-creditor. The antidote, in each case, would be the same. If the assignment was collusive and fraudulent, and made to defeat the creditor, it would be void in either case. But another observation may be excused. The assignment might be made in the lifetime of the ancestor; for an heir or distributee, which is the same character, may assign an estate or interest in expectancy. And probably, if the statute is made operative immediately after the death of the ancestor, he will take care, by his will, to put the share beyond the reach of creditors, rather than allow it to be sacrificed by a sale, before its value can be known. Or the heir may assign his expectancy to some speculator, upon contingencies, to avoid such result. But, suppose the distributive share is attachable immediately after the death, who will be the garnishee? The time must surely be deferred until after the administrator is appointed. The time, therefore, is ambulatory by the indefinite provisions of the statute; and, in construing it, why not refer the liability to attachment to that period when it becomes reasonable, and which pays some regard to the interest of the debtor as well as that of the creditor?

But, after the administrator is appointed, how will he answer upon interrogatories? Can he tell how much is in his hands, belonging to the distributee? Or, if he answers, that, in his opinion, the debts of the deceased will absorb all the personal

2 N

estate, what judgment will the court render? The clause in the execution requires the garnishee to show cause why the judgment shall not be levied of the effects in his hands, and the judgment must be accordingly. The answer of the garnishee, it is true, may be traversed by the creditor, and settlement of the accounts of, the administrator be thus drawn piecemeal into the Court of Common Pleas, at the option of the creditor of any of the distributees. But the administrator could not charge the estate for his trouble and expense in attending to such process, because it would not be services rendered to the estate. The Orphans' Court is the peculiarly appropriate place to settle the account—the place which the law appoints—and the whole personal estate belongs to the creditors of the *estate*, until it appears by the settlement of the account that there is a surplus to distribute. Then the share of the distributee can be attached in the language of the act of 1843, and levied upon in satisfaction of any judgment, in the same manner as debts due are made subject to execution, by the 22d section of the act of 16th of June, 1836; because it is palpable, then, to reason and to sense, and may be described in the execution and in the advertisement of sale, as effects in the hands of the garnishee.

It has been assimilated to the attachment in execution of a bond due to the judgment-debtor. But there is no likeness. The person who owes the bond is to be made the garnishee; and if he has any defence—has made any payments, or owes nothing—he is summoned to a hearing, and may contest, just as if suit had been instituted by the obligee, and final judgment rendered for the amount due. Not so with the administrator; he is blindfold—for he may not know the extent of debts against the deceased, or the availability of the claims due the estate. He must go into a tribunal foreign to his peculiar duties—not on business of the estate, but without allowance for his expense and trouble, and answer on oath to matters which he does not know. But it was urged that the court has control over its own process, and can stay it, to prevent injustice. But courts have no such power in cases like the present. When the judgment is regular and valid, and the execution levied upon that which the mandate of the law authorizes the plaintiff to take, in satisfaction of his judgment, no court has power to enjoin the party. That would be arrogating legislative power, and suspending law. For these reasons, in addition to those given in Bank of Chester *v.* Ralston, 7 Barr, the court were of opinion that the legislature intended to fix the period of time when a distribu-

tive share was liable to attachment to the date of the settlement of the account by administrators, in the Orphans' Court. Upon a review of that opinion, a majority of the court are satisfied with it. It rules the present.

The judgment of the court below is affirmed.

BELL, J., who was not present when the Chester Bank *v.* Ralston was decided, dissented.